UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA,<br>    Plaintiff-Appellee,<br>v.<br>NAYELLY ALFONSO-DELGADO,<br>    Defendant-Appellant. | Case No.:  19-mj-10737-RBM-H<br><br>**ORDER AFFIRMING MAGISTRATE JUDGE CONVICTION AND JUDGMENT** |
|---|---|

On October 1, 2019, Defendant Nayelly Alfonso-Delgado filed a notice of appeal to the district court. (Doc. No. 9.) The appeal is timely, and the Court has jurisdiction over the appeal pursuant to 18 U.S.C. § 3402.

## Background

On September 12, 2019, Defendant was arrested approximately 400 yards north of the United States/Mexico border and seven miles east of the Calexico, California Port of Entry. (Doc. No. 1 at 3.) Defendant stated that she is a citizen of Mexico without the proper documentation to enter, work, or reside in the United States legally. (Id.) Defendant also stated that she intended to enter the United States and travel to Los Angeles, California. (Id. at 4.)

On September 13, 2019, the Government filed a criminal complaint charging

Defendant with being "an alien, [who] knowingly and intentionally attempted to enter the United States of America with the purpose, i.e., conscious desire, to enter the United States at a time and place other than as designated by immigration officers, and committed an overt act, to wit, crossing the border from Mexico into the United States, that was a substantial step towards committing the offense, all in violation of Title 8, United States Code, Section 1325, a misdemeanor." (Doc. No. 1 at 1.) On September 13, 2019, Defendant appeared before the Magistrate Judge for an initial appearance. (Doc. No. 3.)

On September 20, 2019, Defendant appeared before the Magistrate Judge and entered an open plea of guilty without a plea agreement to the single count for violation of 8 U.S.C. § 1325(a)(1) in the complaint. (Doc. No. 14 at 4, 8; Doc. Nos. 6, 7.) At the end of the hearing, the Magistrate Judge accepted Defendant's guilty plea and subsequently sentenced Defendant to time served. (Doc. No. 14 at 8-9; Doc. Nos. 6, 7.)

The Magistrate Judge entered a final judgment on September 20, 2019. (Doc. No. 7.) On October 1, 2019, Defendant filed a timely notice of appeal. (Doc. No. 9.) See Fed. R. Crim. P. 58(g)(2)(B) (setting forth a 14-day deadline for filing an appeal from a magistrate judge's judgment of conviction).

## **Discussion**

"In all cases of conviction by a United States magistrate judge an appeal of right shall lie from the judgment of the magistrate judge to a judge of the district court of the district in which the offense was committed." 18 U.S.C. § 3402. Federal Rule of Criminal Procedure 58(g)(2)(B) provides: "[a] defendant may appeal a magistrate judge's judgment of conviction or sentence to a district judge within 14 days of its entry." Fed. R. Crim. P. 58(g)(2)(B).

On appeal, Defendant raises five challenges to her conviction for violation of 8 U.S.C. § 1325(a)(1). First, Defendant argues that her criminal proceedings violated the Equal Protection Clause and the Due Process Clause of the United States Constitution. (Doc. No. 15 at 1, 4-15.) Second, Defendant argues that § 1325(a) is facially unconstitutional under the Supreme Court's decision in Sessions v. Morales-Santana, 137

S. Ct. 1678 (2017).  (Id. at 1, 15-20.)  Third, Defendant argues that § 1325(a)(1) is unconstitutional because it violates the non-delegation doctrine.  (Id. at 1, 20.)  Fourth, Defendant argues that § 1325(a)(1) is unconstitutional because it is void for vagueness.  (Id. at 1, 20-21.)  Fifth, Defendant argues that the charging document in this case is deficient because it fails to reflect the correct elements of § 1325(a)(1).  (Id. at 1, 21-22.)  The Court addresses each of these challenges in turn below.

**I.     Defendant's Equal Protection and Due Process Claims**

Defendant argues that her conviction should be vacated because her criminal proceedings violated the Equal Protection Clause and the Due Process Clause of the United States Constitution.  (Doc. No. 15 at 1, 4-15.)  Specifically, Defendant argues that her criminal proceedings violated her equal protection and due process rights because criminal defendants charged with violating 8 U.S.C. § 1325 are not prosecuted through the Central Violations Bureau ("CVB") court.  (Id. at 4-15.)  Constitutional issues are reviewed *de novo* on appeal.  United States v. Kuchinski, 469 F.3d 853, 857 (9th Cir. 2006); see United States v. Vongxay, 594 F.3d 1111, 1114 (9th Cir. 2010).

As an initial matter, the Court notes that Defendant has waived these specific constitutional challenges.  In a recent decision, the Ninth Circuit held that a defendant who enters an unconditional guilty plea – "e.g., without a written plea agreement preserving identified issues for appeal" – before a magistrate judge to one count of illegal entry into the United States waives her ability to raise due process and equal protection challenges to the handling of her prosecution on appeal.  United States v. Chavez-Diaz, 949 F.3d 1202, 1204, 1206-07 (9th Cir. 2020).  Here, Defendant entered an unconditional guilty plea without a written plea agreement before the Magistrate Judge to one count of illegal entry into the United States in violation of 8 U.S.C. § 1325(a)(1).  (Doc. No. 14 at 4, 8; Doc. Nos. 6, 7.)  In light of her unconditional guilty plea, Defendant has waived her equal protection and due process challenges to her criminal proceedings.  See Chavez-Diaz, 949 F.3d at 1207 ("[Defendant] through his guilty plea plainly waived his right to appeal his equal protection and due process claims.").

Moreover, Defendant's equal protection and due process challenges fail on the merits. Defendant asserts that the Government's failure to prosecute her in CVB court violates her equal protection rights for two reasons. First, Defendant argues that she and others charged with violating 8 U.S.C. § 1325 are, by definition, set apart on the basis on their alienage and national origin and race. (Doc. No. 15 at 8-9.) Second, Defendant argues that the government's policy of prosecuting everyone except § 1325 defendants in CVB court violates equal protection under the doctrine of selective prosecution. (Id. at 11-14.)

The Ninth Circuit has explained: "However, there is a distinction between statutes which classify based on alienage and statutes which classify based on criminal actions. Given Congress' plenary power over immigration, imposing different rules on immigrants versus citizens does not in itself create a suspect classification." United States v. Mendoza-Hinojosa, 216 F.3d 1085, at *2 (9th Cir. 2000) (citing Fiallo v. Bell, 430 U.S. 787, 792 (1977)). Here, the statute at issue, 8 U.S.C. § 1325(a)(1), prohibits "[a]ny alien" from "enter[ing] or attempt[ing] to enter the United States at any time or place other than as designated by immigration officers." The statute creates a classification based upon specific criminal action, "enter[ing] . . . the United States at any time or place other than as designated by immigration officers," and not alienage. See United States v. Mazariegos-Ramirez, No. 18MJ22276-WQH, 2019 WL 338923, at *2 (S.D. Cal. Jan. 28, 2019) (holding that the related provision "[8 U.S.C. § 1325(a)(2)] creates a classification based upon criminal action and not alienage"). Thus, the statute does not create a suspect classification.

"Non-suspect classifications are 'constitutionally valid if there is a plausible policy reason for the classification, the legislative facts on which the classification is apparently based rationally may have been considered to be true by the governmental decisionmaker, and the relationship of the classification to its goal is not so attenuated as to render the distinction arbitrary or irrational.'" Allied Concrete & Supply Co. v. Baker, 904 F.3d 1053, 1060 (9th Cir. 2018). "'Further, because the classification is presumed constitutional, the burden is on the [party] attacking the legislative arrangement to negative every conceivable

basis which might support it.'" Id. at 1060-61. Here, Defendant has failed to negate every conceivable basis to support prosecuting her for violation of § 1325(a)(1) in the district court rather than the CVB court. First, the CVB is charged with processing violation notices (tickets) issued for petty offenses committed on federal property. Defendant does not assert that her offense occurred on federal property, and there is nothing in the record showing that the offense occurred on federal property. Second, in order to receive a CVB violation notice, a defendant must provide the issuing officer with a U.S. mailing address. (See Doc. No. 15 at 6.) There is nothing in the record showing that Defendant possesses a U.S. mailing address. Third, prosecuting § 1325 defendants in the district court conserves judicial resources. See United States v. Ramirez-Ortiz, No. 3:19-CR-00300-BTM, 2019 WL 950332, at *1 (S.D. Cal. Feb. 27, 2019) ("Misdemeanor § 1325 cases are handled together rather than on the CVB calendar because it makes 'organizational sense' given the volume of § 1325 cases and divergent jurisdictional underpinnings of CVB court."); United States v. Chavez-Diaz, No. 18MJ20098 AJB, 2018 WL 9543024, at *3 (S.D. Cal. Oct. 30, 2018), rev'd on other grounds by 949 F.3d 1202 (9th Cir. 2020) ("Due to the numbers, and the similarity of the charges, and misdemeanor proceedings under Rule 58, including a plea offer for time served if the plea is tendered early on, the misdemeanor § 1325 cases are handled together. It makes simple organizational sense."); see also Bankers Life & Cas. Co. v. Crenshaw, 486 U.S. 71, 82 (1988) (recognizing the conservation of judicial resources as a legitimate government interest). As a result, Defendant's equal protection claim fails.

Defendant also asserts that the Government's failure to prosecute her in CVB court violates her substantive and procedural due process rights. (Doc. No. 15 at 14-15.) The Court rejects this argument. "'[S]ubstantive due process' prevents the government from engaging in conduct that 'shocks the conscience' or interferes with rights 'implicit in the concept of ordered liberty.'" United States v. Salerno, 481 U.S. 739, 746 (1987) (citations omitted). Thus, in order to establish a violation of substantive due process, a claimant must show that the "the behavior of the governmental officer is so egregious, so outrageous, that

1  it may fairly be said to shock the contemporary conscience." Cty. of Sacramento v. Lewis, 523 U.S. 833, 847 (1998); see Rochin v. California, 342 U.S. 165, 172–73 (1952). "[This] 'shock the conscience' standard erects a high hurdle for would-be claimants." Aguilar v. U.S. Immigration & Customs Enf't Div. of Dep't of Homeland Sec., 510 F.3d 1, 21 (1st Cir. 2007); accord Ms. L. v. U.S Immigration & Customs Enf't, 302 F. Supp. 3d 1149, 1166 (S.D. Cal. 2018). Prosecution for violation of 8 U.S.C. § 1325(a) in the district court rather than in the CVB court falls well short of "shocking the contemporary conscience," and, thus, Defendant's substantive due process claim fails.

Defendant's procedural due process claim also fails. "A procedural due process claim has two elements." Franceschi v. Yee, 887 F.3d 927, 935 (9th Cir. 2018). The claimant must demonstrate: "'(1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of adequate procedural protections.'" Id. Here, Defendant fails to explain how she was denied adequate procedural protections. Defendant's proceedings were conducted in accordance with the Federal Rules of Criminal Procedure, and Defendant does not contend that any aspect of her criminal proceedings violated those procedural rules. Cf. Ludwig v. Astrue, 681 F.3d 1047, 1053 (9th Cir. 2012) ("'Notice and [a meaningful] opportunity to be heard are the hallmarks of procedural due process.'"). As a result, Defendant's procedural due process claim fails.

In sum, Defendant has failed to show that her conviction for violation of 8 U.S.C. § 1325(a)(1) violated the Equal Protection Clause or the Due Process Clause of the United States Constitution. See Mazariegos-Ramirez, 2019 WL 338923, at *2 (holding that the defendant's prosecution for violation of 8 U.S.C. § 1325(a) in the district court rather than in CVB court "does not the violate the Equal Protection Clause or the Due Process Clause of the United States Constitution"); Ramirez-Ortiz, 2019 WL 950332, at *1-2 (holding the same); United States v. Benito-Mendoza, No. 19-MJ-23597-RNB-CAB, 2020 WL 206183, at *1-2 (S.D. Cal. Jan. 13, 2020) (holding the same).

///

///

**II.     Defendant's Facial Challenge to the Constitutionality of 8 U.S.C. § 1325(a)**

Defendant argues that the Court should vacate her conviction for violation of 8 U.S.C. § 1325(a)(1) because § 1325 is facially unconstitutional under the Equal Protection Clause in light of the Supreme Court's recent decision in Sessions v. Morales-Santana, 137 S. Ct. 1678 (2017). (Doc. No. 15 at 1, 15-20.) The constitutionality of a statute is a question of law that is reviewed *de novo*. United States v. Dowai, 839 F.3d 877, 879 (9th Cir. 2016); United States v. Younger, 398 F.3d 1179, 1192 (9th Cir. 2005).

Here, Defendant raises a facial challenge to the constitutionality of 8 U.S.C. § 1325. (Doc. No. 15 at 15.) The Supreme Court has explained that "a plaintiff can only succeed in a facial challenge by 'establish[ing] that no set of circumstances exists under which the Act would be valid,' i.e., that the law is unconstitutional in all of its applications." Washington State Grange v. Washington State Republican Party, 552 U.S. 442, 449 (2008) (quoting United States v. Salerno, 481 U.S. 739, 745 (1987)). "[A] facial challenge must fail where the statute has a plainly legitimate sweep." Id. (internal quotation marks omitted). "In determining whether a law is facially invalid, [a court] must be careful not to go beyond the statute's facial requirements and speculate about 'hypothetical' or 'imaginary' cases." Id. at 449–50.

Title 8, United States Code, Section 1325(a) provides that: "Any alien who . . . (1) enters or attempts to enter the United States at any time or place other than as designated by immigration officers, . . . , shall, for the first commission of any such offense, be fined under Title 18 or imprisoned not more than 6 months, or both . . . ." 8 U.S.C. § 1325. Title 8, United States Code, Section 1101(a)(3) defines the term "alien" and provides that: "The term 'alien' means any person not a citizen or national of the United States." 8 U.S.C. § 1101(a)(3).

In Morales-Santana, the Supreme Court held that the gender-based distinctions for derivative citizenship set forth in 8 U.S.C. §§ 1401(a)(7) and 1409(a) and (c) violate the Equal Protection Clause and, therefore, are unconstitutional. 137 S. Ct. at 1698, 1700–01 ("The gender-based distinction infecting §§ 1401(a)(7) and 1409(a) and (c), we hold,

violates the equal protection principle."). Derivative citizenship is the "acquisition of U.S. citizenship by a child born abroad, when one parent is a U.S. citizen, the other, a citizen of another nation." Id. at 1686.

Defendant argues that because a conviction under § 1325 requires that the government prove that the defendant is "not a citizen or national," the Supreme Court's holding in Morales-Santana renders § 1325 facially unconstitutional. (Doc. No. 15 at 19-20.) The Court disagrees.

In order to succeed with her facial challenge to the constitutionality of § 1325, Defendant must establish that no set of circumstances exists under which the statute would be valid, i.e., the law is unconstitutional in all of its applications. See Washington State Grange, 552 U.S. at 449. Defendant is unable to meet this burden because "[t]he severability clause in the Immigration and Nationality Act ('INA') dictates that the remainder of 8 U.S.C. §§ 1401 and 1409 was not affected by Morales-Santana." United States v. Duffy, 752 F. App'x 532, 533 (9th Cir. 2019) (citing 8 U.S.C. § 1101 note ("If any provision of this title . . . is held invalid, the remainder of the title . . . shall not be affected thereby.")); accord United States v. Madero-Diaz, 752 F. App'x 537, 538 (9th Cir. 2019). Thus, Defendant could properly be convicted under 8 U.S.C. § 1325, which incorporates the definitions of "alien" and "citizen" that were not affect by Morales-Santana. See id. In sum, Defendant has failed to establish that 8 U.S.C. § 1325 is facially unconstitutional. See Duffy, 752 F. App'x at 533 (rejecting a facial challenge to the constitutionality of 8 U.S.C. § 1326 based on the Supreme Court's decision in Morales-Santana); Madero-Diaz, 752 F. App'x at 538 (same); United States v. Benito-Mendoza, 2020 WL 206183, at *2 (rejecting a facial challenge to the constitutionality of 8 U.S.C. § 1325 based on the Supreme Court's decision in Morales-Santana).

**III. Defendant's Non-Delegation Challenge to § 1325(a)(1)**

Defendant argues that § 1325(a)(1)'s reference to a "designated" place of entry violates the non-delegation doctrine. (Doc. No. 15 at 1, 20.) "Article I of the Constitution provides that '[a]ll legislative Powers herein granted shall be vested in a Congress of the

United States.'" Gundy v. United States, 139 S. Ct. 2116, 2123 (2019). "Accompanying that assignment of power to Congress is a bar on its further delegation." Id. Thus, Congress "may not transfer to another branch 'powers which are strictly and exclusively legislative.'" Id. (quoting Wayman v. Southard, 23 U.S. 1, 42–43 (1825)).

Nevertheless, the Supreme Court has acknowledged "that in our increasingly complex society, replete with ever changing and more technical problems, Congress simply cannot do its job absent an ability to delegate power under broad general directives." Mistretta v. United States, 488 U.S. 361, 372 (1989). Thus, "a statutory delegation is constitutional as long as Congress 'lay[s] down by legislative act an intelligible principle to which the person or body authorized to [exercise the delegated authority] is directed to conform.'" Gundy, 139 S. Ct. at 2123 (quoting Mistretta, 488 U.S. at 372). In other words, "[t]he constitutional question is whether Congress has supplied an intelligible principle to guide the delegee's use of discretion." Id.

Section 1325(a)(1) "makes it a crime to 'enter[ ] or attempt[ ] to enter the United States at any time or place other than as designated by immigration officers.'" United States v. Corrales-Vazquez, 931 F.3d 944, 950 (9th Cir. 2019) (quoting 8 U.S.C. § 1325) ("Section 1325(a)(1) covers aliens who enter or attempt to enter outside of an open port of entry."). Defendant notes that, by its plain language, whether a defendant's conduct violates § 1325(a)(1) depends on what places immigration officers in the executive branch have designated for entry. (Doc. No. 15 at 20.) Defendant argues that because "[a]n immigration officer can decide what to designate for any reason or no reason at all," this delegation of scope in a criminal statute violates the non-delegation doctrine. (Id. at 20-21.)

The Court disagrees. Defendant's non-delegation argument is based on the flawed premise that any immigration officer can arbitrarily designate ports of entries. This is incorrect.

> Congress requires that aliens seeking lawful entrance to the United States do so at a port of entry. See United States v. Corrales-Vazquez, 931 F.3d 944,

946 (9th Cir. 2019); <u>United States v. Aldana</u>, 878 F.3d 877, 882 (9th Cir. 2017). Ports of entry can only be designated or de-designated by the Secretary of Homeland Security subject to the Administrative Procedures Act. See 8 C.F.R. § 100.4(a). Ports of entry also necessarily include facilities, staffed by immigration officials that are set up to accept applications for admission. <u>Aldana</u>, 878 F.3d at 882. To interpret Section 1325(a) to permit a border patrol agent to designate a portion of the border fence "on a whim" is in direct conflict with Congress's clear statutory scheme.

<u>United States v. Nunez-Soberanis</u>, 406 F. Supp. 3d 835, 839–40 (S.D. Cal. 2019).

Thus, Congress has supplied an intelligible principle within the language of § 1325(a)(1). Further, because § 1325(a)(1) and the related statutes does not give immigration officers "anything like the 'unguided' and 'unchecked' authority that [Defendant] says," her non-delegation challenge fails. <u>Gundy</u>, 139 S. Ct. at 2123. As such, the Court rejects Defendant's non-delegation challenge to § 1325(a)(1). See <u>Nunez-Soberanis</u>, 406 F. Supp. 3d at 839–40 (rejecting non-delegation challenge to § 1325(a)(1)); <u>United States v. Melgar-Diaz</u>, No. 19-MJ-23798-RNB-CAB, 2020 WL 206184, at *3 (S.D. Cal. Jan. 13, 2020) (same).

**IV.    Defendant's Vagueness Challenge to § 1325(a)(1)**

Defendant also argues that § 1325(a)(1)'s reference to a "designated" place of entry renders the statute void for vagueness. (Doc. No. 15 at 1, 20-21.) The Fifth Amendment of the United States Constitution provides that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law." The Supreme Court has established that "the Government violates this guarantee by taking away someone's life, liberty, or property under a criminal law so vague that it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement." <u>Johnson v. United States</u>, 135 S. Ct. 2551, 2556 (2015).

Defendant argues that § 1325(a)(1) is unconstitutionally vague because the statute allows an immigration officer to decide what places and times to designate for entry. (Doc. No. 15 at 21.) Defendant contends: "An immigration officer can decide what to designate for any reason or no reason at all." (<u>Id.</u>) This argument – like Defendant's non-delegation

argument – is based on the flawed premise that any immigration officer can arbitrarily designate ports of entries. "[T]his is not correct. Individual Border Patrol agents cannot designate ports of entry on a 'whim.' Section 1325 clearly delineates the conduct that it prescribes, and is not impermissibly vague." United States v. Zeferino-De Jesus, No. 319MJ23139AHGDMS, 2020 WL 94373, at *7 (S.D. Cal. Jan. 7, 2020). As such, the Court rejects Defendant's vagueness challenge to § 1325(a)(1). See id.; United States v. Ramos-Moran, No. 19CR2984-LL, 2019 WL 4393670, at *3 (S.D. Cal. Sept. 13, 2019) (rejecting vagueness challenge to § 1325(a)(1)); Melgar-Diaz, 2020 WL 206184, at *3 (same).

**V.     Defendant's Challenge to the Elements in the Charging Document**

Defendant argues that the charging document in this case was deficient because it failed to encompass the correct elements of § 1325(a)(1). (Doc. No. 15 at 1, 21-22.) Under Federal Rule of Criminal Procedure 7, a charging document must include the "essential facts constituting the offense charged[.]" Fed. R. Crim. P. 7(c)(1). A charging document "that tracks the words of the statute violated is generally sufficient" to allege the elements of an offense, but "implied necessary elements, not present in the statutory language" must also be included. United States v. Jackson, 72 F.3d 1370, 1380 (9th Cir. 1995).

First, Defendant argues that the charging document in this case is deficient because it fails to allege that Defendant had "'the specific intent to enter the country free from official restraint.'" (Doc. No. 15 at 22 (quoting United States v. Vazquez-Hernandez, 849 F.3d 1219, 1225 (9th Cir. 2017)).) This argument is foreclosed by the Supreme Court's decision in United States v. Resendiz-Ponce, 549 U.S. 102 (2007).

In Resendiz-Ponce, the defendant challenged the sufficiency of her charging document, which alleged "attempted" reentry into the United States in violation of 8 U.S.C § 1326(a). 549 U.S. at 104. The Supreme Court acknowledged that "'[a]n indictment must set forth each element of the crime that it charges.'" Id. at 107 (quoting Almendarez-Torres v. United States, 523 U.S. 224, 227 (1998)). Nevertheless, the Supreme Court found the indictment at issue sufficient because the word "attempt" "encompasses both the overt act

and intent elements." Id. "Consequently, an indictment alleging attempted illegal reentry under § 1326(a) need not specifically allege a particular overt act or any other 'component par[t]' of the offense. . . . [I]t [i]s enough for the indictment in this case to point to the relevant criminal statute and allege that '[o]n or about June 1, 2003,' respondent 'attempted to enter the United States of America at or near San Luis in the District of Arizona.'" Id. at 107–08 (citations omitted).

Here, the charging document at issue – like the charging document in Resendiz-Ponce – expressly uses the word "attempted," which the Supreme Court has explained "encompasses both the overt act and intent elements." 549 U.S. at 107. Consequently, just as it is enough for an indictment to allege that "'[o]n or about June 1, 2003,' respondent 'attempted to enter the United States of America at or near San Luis in the District of Arizona," id. at 108, it is enough for the charging document in this case to allege that "[o]n or about September 12, 2019, . . . defendant . . . knowingly and intentionally attempted to enter the United States of America with the purpose, i.e., conscious desire, to enter the United States at a time and place other than as designated by immigration officers." (Doc. No. 1 at 1.) See Ramos-Moran, 2019 WL 4393670, at *3 (finding information alleging violation of § 1325(a)(1) sufficiently charged because the information's use of the word "attempt" encompasses the intent element of the offense); United States v. Velazquez-Hernandez, No. 19CR03066-KSC, 2020 WL 475272, at *4 (S.D. Cal. Jan. 28, 2020) (same); see also United States v. Devore, 771 F. App'x 427, 428 (9th Cir. 2019) ("When used in the law, the word 'attempt' connotes both action and intent."). As such, the Court rejects Defendant's argument that the charging document is deficient because it fails to allege the specific intent element of the charged offense.

Second, Defendant argues that the charging document is deficient because it fails to allege that Defendant had knowledge of her alienage (i.e., that she knew she was not a United States citizen). (Doc. No. 15 at 22.) Defendant argues that this specific mens rea element is required under the Supreme Court's decision in Rehaif v. United States, 139 S. Ct. 2191, 2195–97 (2019). (Doc. No. 15 at 22.) The Court rejects this argument. Rehaif

is inapplicable here.

In Rehaif, the Supreme Court held that "in a prosecution under 18 U.S.C. § 922(g) and § 924(a)(2), the Government must prove both that the defendant knew he possessed a firearm and that he knew he belonged to the relevant category of persons barred from possessing a firearm." 139 S. Ct. at 2200. This holding was based on the text of § 924(a)(2)'s use of the term "knowingly." See id. at 2195–97 ("As 'a matter of ordinary English grammar,' we normally read the statutory term '"knowingly" as applying to all the subsequently listed elements of the crime.'").

In contrast, here, Defendant was not charged with violating 18 U.S.C. § 922(g) and § 924(a)(2). Rather, Defendant was charged with violating 8 U.S.C. § 1325(a)(1), which does not contain the term "knowingly." See 8 U.S.C. § 1325(a). Thus, Rehaif's holding is inapplicable to the present case. See Velazquez-Hernandez, 2020 WL 475272, at *5 ("The question in Rehaif . . . concerned 'the scope of the word "knowingly,"' with the Supreme Court holding 'knowingly' applied to 'both defendant's conduct and status.' In contrast, here, Congress did not incorporate a 'knowingly' requirement into the text of § 1325(a)(1)"); Ramos-Moran, 2019 WL 4393670, at *4 (same); Nunez-Soberanis, 406 F. Supp. 3d at 843 ("[T]he Court concludes that the rationale in Rehaif is not directly applicable to a prosecution under § 1325 and does not require the Government to allege or prove that Defendant knew he was an alien."). In sum, the Court rejects Defendant's challenges to the sufficiency of the charging document in this action.[1]

///
///
///

---

[1] In addition to her challenges to charging document, Defendant also argues that the factual basis for her plea was deficient because her plea did not include the mens rea element that she knew she was not a United States citizen as required by Rehaif. (Doc. No. 15 at 22.) Because Rehaif is inapplicable here, see supra, the Court rejects this additional argument.

## Conclusion

For the reasons above, the Court denies Defendant's appeal and affirms Defendant's conviction and judgment.

**IT IS SO ORDERED.**

DATED: April 21, 2020

_____
MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT